The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. You may be seated. Mr. Howell, are you ready? Thank you, Your Honors. Sorry, the mask is... Your Honors, why isn't, I began to ask, why isn't this case governed by Trust Guard v. Collins? Why wasn't the district court correct in basically saying, both in terms of justiciability concerns and both in, as well as in terms of entanglement concerns, if you will, that a determination regarding the alteration of patient records would be something that would be determined in the State court. No need to determine it right now. And it would be something that would be an interference, as in Trust Guard, with a fact that would be determined as to evidence in a medical malpractice case and done without the same panoply of evidence that would be before the district court. Why doesn't, why isn't that proper? Trust Guard, since it was issued, that decision has basically governed decisions regarding insurance declaratory judgment actions over and over. And with respect to that case, typically the first analysis is whether or not there is an immediate, realistic, present, justiciable controversy. And in the case of insurance company duty to defend cases, as well as indemnity cases, typically that's determined to be a present, a present, you know, issue of controversy and a present injury. But there's something else in this case that also had nothing to do, if you will, with how the State court case would be determined, which is that this was a collateral indemnity duty case, if you will. Just as Nautilus Insurance Company v. Winchester Holmes was a misrepresentation case, just as Great American Insurance Company v. Gross was a … But there was no bar to you bringing a declaratory judgment action in the State court. I'm sorry, Your Honor, there was no bar? If you had wanted to bring the same action in the State court, you could have done so. Well, we could have brought it in that forum. Absolutely, Your Honor, is correct. We could have brought it and we would have brought it, obviously, in the same timing that we did in Federal court. However, there is a body of instructive evidence that the Fourth Circuit has issued over the years since the original cases in interpreting Brilhart that encourages insurance companies to come to the district courts to seek early determinations of coverage and defense because of a couple of important reasons. One is that the insurance company from the get-go has an immediate duty of settlement. If the insurance company receives a limits demand, not knowing whether there is coverage means the insurance company has to guess about whether it's right. If it guesses wrong, the consequences are considerable. But in addition, it is essential for all of the parties to have some notion of whether there's coverage or not. In the absence, everyone is guessing. And certainly, as in Trust Guard, if we are really talking about a core issue that's going to be determined at the state court trial, in that case it was whether or not there was agency, and that absolutely kicked out or kept in one of the parties, if that's the case, then indemnity really waits until the trial court determines the outcome of that case or the jury does. This is not that sort of case. This is the sort of case that, in Great American, there is a separate question of a violation that essentially voids recovery under the policy. In that case, it was whether Mr. Ken Patterson properly, truthfully said that the financial statements in support of an extra $10 million of coverage were true. Yes, Your Honor. If the alteration made the medical record more correct, that still voids the policy? This is the way the law addresses that question in Virginia. The alteration, if it's a breach of a duty of cooperation, has to be material. If it's trivial, if it has no impact, there is no way it is a breach of the duty of cooperation. The policy doesn't have to say that. The law says that. And in this context, material would mean something else. We have no idea, based on the limited record we have, what the alteration you claim is to be. That's right, Your Honor. With respect to, frankly, patient confidentiality issues, we allege the sufficient facts under the language of the policy that there was a material alteration that it involved potential evidence with respect to patient care. And that's all the policy requires. But the law adds, again, an overlay. That has to be material. We allege it was material. Yes, Your Honor. I suppose if the alterations were not material or wouldn't affect the risk of the insurance company, then you would have the declaratory judgment would provide you have coverage. That would be done by the court exercising jurisdiction. I think your argument, I suppose, rests on the notion that there is an allegation that there was a material alteration that alters the risk of the company. And you have to make that demonstration. But the real question is, can that be determined in advance of the trial in order to determine who defends the trial? All right, Your Honor. Materiality with respect to insurance law in this case has to do with whether or not it affects the insurance company's ability to fulfill its duties. That includes investigation of the claim. I understand all that, but that's not the issue before us. In other words, we're not trying the case on whether you've set a good ground. What we're deciding is whether the declaratory judgment is available or should be available in advance of the State trial or while the State trial is going on in order to order who defends. And if you fail in determining on the substance that the change was material, you're going to cover. And if you succeed, you're not going to have to cover. But that's Virginia law, and that's not before us, is it? In our case, materiality has nothing whatsoever to do. Well, I'm not arguing whether it's material. I'm arguing whether it changed the risk or whatever the standard is. The fact is you have asserted a condition in the policy that would entitle you not to cover. But we're not here to decide whether you have adequately proved that. That has to be done in the proceeding. And the insured can come back and say, I made changes that were beneficial, that corrected things, and you're going to lose. You're going to have to provide coverage. But the whole issue here is whether this proceeding should go ahead now in this context. And I think our law basically is to focus on the nautilus standards issues that we issued, Judge Phillips issued years ago here. And it seems to me you have to accept whatever the declaratory judgment says if it can go ahead. Your Honor, we would have the same issue to adjudicate after the State court trial as before. And nothing that would be offered in the State court trial would have to do with the insurance company. Well, that goes to the nautilus factors. In other words, the question is, will the State proceeding decide the same issues? Are the same parties? Are the – is there a real dispute here? Those types of things. I mean, it's a – we have jurisdiction under – what is this, diversity? There's no jurisdiction under 2201. No, no, no. There's not, Your Honor, of course. Okay. So that's the remedy that's available in Federal court. But what's your basis for jurisdiction here? In this case, it is the – the exercise of discretion to entertain – I'm asking you what the jurisdictional basis for this action is. Well, I'm sorry. Well, we have diversity as a reason. Okay. That's what I thought it was. Okay. Fair enough. I'm sorry, Your Honor. Again, my mistake for not understanding. I apologize. We'd have the same issue to adjudicate. I'm sorry, Your Honor. What happens in this case? Let's say we tell the district court they were wrong, they go forward, and there's evidence presented that the physician defendant made a material change that falsified the medical record. And that's the evidence that's introduced in the Federal declaratory judgment action. And the findings made on that. Isn't there going to be a collateral estoppel issue that would then come up in the state trial? Your Honor, there's going to be no determination in Federal court that any alteration had any relevance to the medical malpractice case. There's not going to be any dispute about what the alterations were. The only issue, and it's an issue that only the insurance company can offer evidence to, and we're not a party below, is what is the impact on our job, on our duties? Does it make any difference? If it doesn't, we're out of court. If it does, that has no bearing on the underlying state court trial. Right, but you're going to have to produce some evidence as to what the alteration was. All we have now is a bare allegation that some sort of unknown alteration occurred. Correct? Yes, absolutely right, Your Honor. The actual alterations would be in evidence in this case, in the state court case, and the confusion. Well, but that goes back to my question. If it proceeds here and there's a finding made that alterations A, B, and C were made, isn't there going to be a collateral estoppel effect in the state trial? Well, there's going to be a determination that the record as it was changed existed. That doesn't mean that there's a determination as to whether or not there is liability or basis for medical malpractice. The state court complaint doesn't even allege that. And it's unlikely that this would ever come into evidence in the state court. Well, why do you say that? I mean, if there's an alteration of the record that shows that the defendant physician in this case and in that case changed something from true to false, that would seem to be a fairly material change for both the insurance aspect and the liability aspect in the state court. Well, it wouldn't affect the insurance issue with respect to materiality. But, Your Honor, it's anathema to offer that evidence in the state court. It is what? It is anathema to offer that evidence in the state court trial because of its impact on coverage. It is speculation that it might even come in. And what we said in Great American Insurance Company, what the Court said was, we're not speculating. We're doing a careful examination of the scope, and we're determining whether we have a significant overlay of duplicative issues. Great American had more duplicative issues on which liability turned than any other case ever involving declaratory judgment, ever. The state court case in Alabama absolutely addressed that issue. But this Court said that wasn't all it did, and it wasn't a significant overlay. The overlay with respect to this case is a speculation that there might be introduction of evidence with respect to what records were changed. The district court thought that meant that's an evidentiary determination of materiality. It's not. Materiality in the insurance case has nothing to do with admissibility below. And admissibility below, if it's introduced, there's no dispute to what happened. There's no dispute to what happened. The change either is or isn't something that fits within the requirements of the policy, just as a misrepresentation in the Great American case fit in with something that absolutely was coming into evidence in that case. But there were so many — fundamentally, the Reciprocal of America case was about something else. It was about a scheme to mask retrocessionary reinsurance. And this Court apprehended that, that that was very different from the issue that, yes, would or might well be litigated as part of that lying about financial statements to the regulators. It recognized that. But it said under the precedent we apply, it has to be more than that. And we have a duty to inquire carefully into that. And at the end of the day, even if we see that this is something that could,  that our experts wouldn't be in that case in Federal court, there wouldn't be the opportunity to have a full panoply of the evidence. But it only went to a piece of a larger case. And that's why the Court of Appeals determined it was an abuse of discretion not to entertain the case. Your Honor, with respect to, again, the issue of what the — what the State — what the district court was doing, even though I don't know that it articulated that well, I do think that it was — it was focusing on, in addition, the concerns in Trust Guard about why do we have to do this now? Why do we have to make this determination now? Won't the State court make this determination? Well, of course it won't. We're not a party. And because necessary facts to establish our position will not be determined by the State court, we'll have this — we'll This shouldn't be at the end of the day because we have immediate, immediate issues to address that affect the rights of everyone in this case and, in addition, would obviously give assistance to everyone with respect to what individuals, parties below, decide to do. We've — we've seen breach of duties of cooperation as collateral issues, even though there may be some factual overlap. For instance, one of the — the major Supreme Court cases involving breach of the duty was assertion of the Fifth Amendment privilege. There's not going to be any testimony about fundamental issues at stake in the State court. That certainly impacts what's going to happen in the State court. But it was a breach of cooperation as soon as it happened, as soon as the Fifth Amendment privilege was asserted, because at that point, the insurance company could no longer do its job of preparing for that State court trial. That's the difference in the focus with respect to what this particular provision involves, this type of duty involves, and what the decision would be from the State court as to should we admit as relevant evidence of — of changes in the record. It may or may not be relevant, but that would be a different question to do with our case. And again, Red American recognizes that specifically underlined that when we are talking about a lie to an insurance company, even though there's factual overlap, that is a fundamentally different issue than what is at issue in the State court. Whether we're talking about cooperation under a policy provision, that is a fundamentally different issue. And I see that my — my time initially reserved is out of time, Your Honor. Thank you very much. Thank you, Mr. Powell. Mr. McNew. Good morning, Your Honors, and may it please the Court. I'm Kyle McNew, and along with my partner, we represent the Yonah State. We're here arguing on behalf of both the Yonah State and Dr. Latawa, the Ibelese in this case. MedMutual's request for a declaratory judgment would have required the district court to wade into contested and undeveloped factual issues that are at issue in the underlying State court case to answer an important and novel question of State law. Its exercise of discretion to decline declaratory judgment jurisdiction was appropriate in this case. I'm going to begin with a couple of arguments that — I'm not sure that's the standard, but the question really is how — you're asking the insurance company to put up a defense based on a asserted — against asserted statement by the insurance company that said you haven't satisfied the conditions for a defense, and they're seeking a declaratory judgment, which is done hundreds of times. I mean, it's — this is norm — the standard procedure. I probably participated in 25 or 30 of these when I was a lawyer in — it's just the normal way to go when there's a doubt about coverage. And the main reasons that we abstain — it's an exception to our duty to hear cases that are set forth in Nautilus. And I haven't heard much reason that Nautilus focuses on the most significant cases where you're going to try to try the opposite side of the State case in Federal court. So in State court, you sue the insurance company for breach of contract, they didn't do something, and in Federal court, they file a reverse suit saying we want a declaratory judgment. In that case, the Federal court clearly would be asked to abstain in favor of the State court because it's a State court issue, breach of contract case and so forth. But here, the typical — it's the typical case where you have a tort action and you have an insurance company being asked to provide coverage. And the issues decided in the Federal court are not the — who's liable in the tort action. It's what does the policy provide. Now, the mere fact that there's an overlapping issue has never precluded this. Obviously, if the Federal case is going to decide liability, then you may bring in the notion that they have the two suits. But I haven't seen the — shouldn't the argument focus on the Nautilus factors? Absolutely, Your Honor. Okay. That's what I thought. So I'll agree with half of what you said and disagree with the other half. Well, I would think so. I'll agree that this is not your normal procedural fencing case. This isn't a — But that's what the Nautilus factors are aimed at. In other words, abstention — It's what one of the Nautilus — Abstention is a pretty serious matter. In other words, courts are there available to the public, and we usually address cases that are filed. So if we're abstaining from deciding a question over which we have jurisdiction, there has to be a good reason. And as you say, fencing, I think, is the typical model that I think Nautilus aims at. Well, so, yes, abstention generally is the rare bird. And that's under the Colorado River analysis. But in the Declaratory Judgment Act, because it is discretionary jurisdiction, that presumption of — that presumption of retaining jurisdiction isn't necessarily as strong. But I'll meet you where you are on this, right? Yes. The procedural fencing is one of the four Nautilus factors. And we don't have that in this case, no question. The other Nautilus factors are the State interest, efficiency, and the risk of entanglement. And so where I'm going to push back on what Your Honor said earlier is this is not your typical — I agree. These — This is about as typical as we see them. I can't figure out — in other words, an insurance company trying to clarify its coverage before the court trial on the tort case, the insurance company gets to decide how to defend the court case on the strategies, on the evidence, on a lawyer, all kinds of things. And to make them defend a case where there is no coverage, that's their allegation, of course, but where there's no coverage, is resolved usually by the paradigm that we have here, where you have declaratory judgment and State tort action. Sure. And I — And I don't know what your objection to being — to have coverage decided in this case. It's basically — it sounds to me they have an uphill battle because there's so many reasons for fixing records, adjusting records, modifying them, and so forth. If there's actual manipulation that's serious enough to cause a contract to be voided, that's a heavy burden. But I don't know why you wouldn't just — you're going to have to face off on this sooner or later, right? So if I can take a couple pieces of that. So this is not your typical coverage dispute case because — Why not? I'll answer that. Because the typical one is where — is, like my friend said, where there's a collateral issue, was there — was there fraud in obtaining the policy? Like, did you tell the carrier that, oh, yeah, you have a 17-year-old driver living with you? That has nothing to do with who — you know, with anything in the underlying case. Was there — A typical one is when they fail — when the insured fails to give notice of the claim. Right. And that has nothing to do with anything in the underlying case. No, but it affects the way you defend the case. In other words, now you have to set aside default judgments or you have to — or witnesses are gone. You don't have — you can't take statements and so forth. The insurance company has a risk that they sign on for. And one of the aspects of the risk is that you're going to cooperate, that the insurance is going to not destroy evidence, that it's not going to alter the case. And so it's a pretty heavy burden to get over that, but it's — if they make that allegation, it seemed to me that ought to be tried. That's collateral. It's not going to decide the malpractice. No, but getting to Judge Agee's question, it will impact how the — it could impact how the malpractice case is tried. Well, maybe. Because — because — because — I think my friend even agrees that if the answer to Judge Agee's question of if the — if the — if it's true that the alteration just made the record more clear, more accurate, better, that would not be a substantial — you know, even under their paradigm that the analysis is substantial and material, that would not be a material thing because it wouldn't affect their ability to defend, settle, and — and resolve the case. So — so — but if not, right, if — for them to win, I think they're going to have to — even under their paradigm, they're going to have to show, and the district court is going to have to find, that the point of this alteration was nefarious or that its effect was in some way problematic to the records. You know, kind of — you know, kind of tantamount to spoliation. I don't know the legal law on this, but my guess is that it has to be sufficiently — nefarious is an okay word — manipulative, fraudulent in order to alter the risk so that it's beyond its risk now. It can't defend it. And if — But that's a heavy burden. That's — that's not the issue before us. The question is, should we decide that now in advance of the State trial to decide who's going to defend that case? And so I think that is the issue before the Court. That certainly is going to be the issue before the district court. The district court is sitting — No, of course. The district court has to look at those records and see where they're altered and whether it affects the insurance policy. But in determining — in determining whether to retain jurisdiction, to — Well, jurisdiction is here under 1332. Right. And the remedy is 2201. In determining whether to exercise its — its declaratory judgment discretion to — to retain jurisdiction of the case, it has to sort of make a prediction about what's going to happen down the road. And what it's looking at is, if I get into this case — Why does it have to do that at all? Because those — Because those is a malpractice case. The allegations in the malpractice are laid out. The allegation is that the insured altered the records or destroyed records. So the question is, what records and how did they do it? And there's a legal conclusion, does that affect the contract? Does that affect the duties and the risks? For my friend to win in the district court, he — the district judge is going to have to find, as a fact — in order to find that this alteration was substantial and material, the district judge is going to have to find, as a fact, that the point of the — of the alteration was nefarious, fraudulent, whatever. Right? For me to win, that's different. But for him to win, for them to prevail, for them to get out of their coverage obligations, which is what the district judge is being asked to do right now, they have — the judge is going to have to make that finding. That is a finding of fact that's going to put its thumb on the underlying litigation. There is a risk of — What's wrong with that? I don't understand what's — you know, if you have a big entanglement, it's one thing. But if you have a finding that there was a fraudulent alteration of a document, I don't understand why you're afraid of that. That's either going to be a fact or it's not going to be a fact. The conclusion, the legal conclusion following it is the extent to which it affects the contract. But under the — under the nautilus factors, the third factor is the risk of entanglement. Yeah, I understand. And that fact-finding is going to be a huge thumb on the scale in the underlying malpractice case, because now you have a Federal district judge who has made a finding of fact that this doctor is nefarious and was trying to hide something. And that's — and I'm a party to that case, the plaintiff, in the underlying malpractice claim. Dr. Littal is a party to that case, to this case, and also in the underlying case. I think we're going to be bound by that. I think that is a collateral estoppel issue. You might, but — And there are two other doctors in that case. But is there a problem with that? I mean, my point is the malpractice is another case. And if they had to decide whether you or your client was liable, that's a different story, because now you have the fencing problem. You have a Federal court against a State court deciding the core issue. But this peripheral issue about whether some documents were destroyed, if they were destroyed, they can either prove it again or they can rely on what was decided. But they may not even be able to do that because not all parties were here. But that's a — that's an evidentiary hearing. I mean, you know, you have that problem in every declaratory judgment case virtually. I don't believe so, because in most DEC actions — and I've been in plenty of them as well, Your Honor, and they're a useful vehicle in the right case. Because in most DEC actions, the issue is so collateral to anything that — you know, did you give timely notice? That has nothing to do with any of the facts in issue or any of the questions in issue in the underlying case. Here, did you make a material and substantial alteration to this patient's medical records, is absolutely at issue in the underlying case. So I disagree with your premise. I disagree. Scalia. It's a malpractice case. It may help proof, but it's not the core of the malpractice at all. The malpractice related to the treatment of a condition. Right. But I don't think that just, you know, resolving the whole — you know, answering the whole question in the underlying case is not what the nautilus factor is. It's a risk of entanglement. If that were true, then we wouldn't have the nautilus factors. We would just have the nautilus factor, and that would be the procedural fencing piece. But we have all these other factors, and so — and that's what this Court did in Trussgaard, right? Trussgaard — Part I of Trussgaard is the Article III concerns. We don't have those here. No question. Part II of Trussgaard is the nautilus factors analysis. And it didn't talk about, oh, this is going to decide the case. This is going — you know, it said we should have — the district court should have stayed its hand because it could have an impact on the underlying litigation. That's what the district — you know, it's we should step back from this and let the underlying litigation play out. I think that's — isn't that the strongest argument, that the district court, looking at it, thought it was a place of caution, right? Because the Supreme Court has said that declaratory judgment doesn't confer a right. It confers discretion on the court but not a right to the party to have it. Absolutely. I think the district judge looked at — the district court looked at what was alleged, right, which wasn't much. And the district court commented on that in the oral argument multiple times. How do I decide? How am I comfortable, based on what you've alleged and what you've provided me at this point, that I'm not going to be sticking my nose in stuff that should be handled in the state court first? The answer to — not the answer, but reflecting Judge Niemeyer's good question about why do you care or what difference does it make here because it could be related to something that might be related to the insurance company but it has nothing to do with the case but then that might be sort of burlesque in the case and make the trial fact feel untoward about your client or a client that has nothing to do with the case. So I think the district court is looking at why should I entangle myself with the potential of it? Absolutely. It's the — you know, a district judge finding — making fact findings about the alteration can — there's a really strong chance that it's going to come up in the circuit court. I don't know how that's going to be, whether the plaintiff is going to use it offensively, whether Dr. Latawa is going to use it defensively, whether one of the other two doctors who are at issue in the underlying case are going to use that to point the finger at Dr. Latawa. And the district judge went through that. He said, based on what you've alleged, which they've admitted isn't much, and which they said in the district court, that's their fault. That's Joint Appendix 91 to 92. You know, they conceded the reason that there's not much in this complaint is on them and this issue of, well, we did it to protect confidentiality. There's an easy way around that. If you think that's the cure, judge, can we file a complaint under seal so we can tell you all — everything, you know, we can give you all the skinny on this? They didn't ask to do that. They gave the district judge a very bare record, and the district judge said, I see in the exercise of discretion a decent chance, a strong chance that I'm going to stick my nose somewhere where it shouldn't be. I'm going to stay my hand. There's nothing that prevents them from coming back after the case and resolving and dealing with that then. You know, so I don't think they should get the benefit of that, you know. So Judge Hudson knows what he's doing. This idea that he was just confused about what a malpractice case is, that's not what he was talking about. He was saying their argument, if accepted, is going to have a pretty strong impact on the whole medical malpractice regime in Virginia. Because if, as Judge Agee said, if any alteration kicks coverage, whoo, boy, there's a lot of doctors that, you know, may change how they practice medicine to the detriment of their patients. So that is a pretty big issue, and that's the state interest piece of the nautilus factors. That's not the dispositive one, but it's one, and it's one that the district court, in its discretion, found weighed in favor of staying its hand. If that had been the only one, we may have a different issue. Because that issue is still going to be in play on the back end, but then it's just an eerie analysis at that point. Should I answer a question of state law or should I certify it to the Supreme Court of Virginia or something like that? Here we have these other issues, the efficiency and entanglement issues, that the district court looked at and analyzed and said there is a real risk of unnecessary entanglement. And, again, this Court, you know, even in Trust Card, said, you know, the nautilus factors look at issues of practicality. And one of the issues of practicality is, you know, I understand that the insurance company doesn't want to pay one more dime than it has to to defend an insurer that it thinks it shouldn't have to defend. I understand that. But there's also, I mean, that doesn't outweigh other issues, the entanglement issues, the comedy issues. Another issue of practicality, as we sit here today, is that the state court trial is in, like, two and a half months. Right? The trial is set to go forward in June in Petersburg. So after that's over, now we're going to know what role did this alteration play in the underlying case? Did it affect the, did it prejudice the carrier or the insured? You're going to have a much more fixed, crystallized, factual predicate from which the district court or any, you know, state, you know, if they want to file in state court, if they want to file in federal court, can then say, all right, now I'm just answering a legal question. That's what deck actions usually are, just answering a legal question. What does the policy say? Does this stipulated set of facts implicate the policy or not? As we sit here today, it's not just a legal question. There's a factual predicate question as to what was the nature of the alteration, what was its impact, why was it done, what was the motive behind it. Didn't I hear you correctly? You said this was a novel issue? Yes. This exclusion that they rely upon not only has never been enforced in Virginia, from what I can tell, they haven't cited a single case where across the country they've said, yes, you know, we're going to rely on this exclusion. And, you know, so there is a novel question. Is this a condition precedent? They say it is because they say it's a cooperation clause. We say no, because a cooperation clause requires you to do something. A condition precedent under Virginia law requires you to do something, give timely notice, cooperate. Here, the exclusion of the law. I'm not sure how this bears on it, but what if we haven't ensured that is also exposed potentially to some criminal liability and the insurer decides to throw out all the documents, destroy them all, everything, and the insurance company is asked to defend the civil suit? Would it be entitled to, under this clause, exclude itself from coverage? I mean, it seems to me you can concoct circumstances where it seems to me that when an insured makes it very hard for the insurance company to defend or impossible or likely to increase its indemnity risk, that it could invoke it. I don't think that's before us. All we have is the allegation. Right. So I'll answer that question in two parts, if I may. I see my time's expired. I'll answer that question in two parts. One, at that far end of the spectrum. Well, I was trying to create that. Yeah. Yeah. You're taking it to the extreme. I understand that. Because you could take it to the other extreme, right, where the only alleged alteration is they change the page number. But taking it to the took-it-outside, put-it-in-the-trash-can-and-lit-it-on-fire example, what I think most carriers there would do would be like would say, I clearly don't have to defend you here. I'm not providing you a defense. I'm out. Come after me if you want to. That's what my experience is. They wouldn't even – That just flips the order. The whole idea of the declaratory judgment is not to force that hand. Right. And so – but I'm just saying, practically speaking, my experience has been in those crazy extreme cases, they don't defend under a reservation. Second, the second part of the answer is I think the answer may be yes if that is alleged, if the nature – if it's alleged that that is so extreme in the deck action, that's going to give the district court much more comfort at the outset that, no, I'm not going to have to be making any real contested fact findings about what happened here or why. There's no good reason to light everything on fire, to light the records on fire. There's no – there's no chance in which that wouldn't be substantial and material. Here, they haven't given the district court or this court, still today, any comfort level, any meat on the bones of what these alterations were, why they were made. Did that go, though, to the merits of the declaratory? In other words, we don't have to forecast how good their evidence is. It seems to me the question is whether this is an issue that could be decided ahead of the trial without much entanglement, the degree of entanglement. And that's, I think, your best argument, the entanglement argument. And the district court has to make that – has to prognosticate that, because it acts at the beginning of the case, before it takes evidence, before it does that discovery. Am I likely to get halfway down the road and realize I've made a mistake and realize I'm too far in the weeds on this? So it's that risk of entanglement that is at issue here and that the district court, well-experienced, knows the law on this issue, knows the – you know, isn't afraid of issuing declaratory judgments in the right case, said there's too big of a risk in that case, in this case, under these particular facts. This is not a case for all seasons, right? This is not a you-may-never-file-a-deck-action-on-a-coverage question. It's under the facts of this particular case, in light of this particular exclusion or policy provision that they rely upon, the wise course here is to stay our hand. That is a perfectly valid exercise of discretion. That's what the – that's what the Supreme Court has said you should do. We would ask that the district court be affirmed. Thank you, Mr. McNeill. Mr. Hall, will you have some time? Thank you, Your Honor. It's certainly not before the Court of the full knowledge of the parties in the State court case about what the changes were, but it is relevant that there is no allegation in the State court case that there is any record alteration. I suppose it could happen. There's none now. There's none now, and it could happen. Judge, you're absolutely right. It could happen. Why don't you address that issue? I think it's a substantial issue under Nautilus, the degree of entanglement from the specifics of this case. What's your response to that? Well, Your Honor, again, first the requirement is to make that careful inquiry as to what, in fact, will come up. And it's not speculation. It's a determination of what there will be. Judge Spencer, in the Gross case, went ad nauseum in that case about what was really going to happen in the State court. Those were serious issues. In this case, I've just heard argument that plaintiff doesn't even anticipate they will offer that evidence. Maybe a co-defendant will offer it. Maybe it won't come in. We don't know. But what will, in fact — You have the burden of proving modification, alteration, or destruction, whatever the language is of the policy. You have the burden of proving that. Let's assume you prove it in spades. You prove that there was a fraudulent alteration of documents that could be changed and half the documents were destroyed that had relevant material on them. And the question now is how do you think that might be used in the medical malpractice case in the State court? Well, Your Honor, it would be absolutely contrary to the requirements under Virginia law for us to prove fraudulent intent. That's not alleged. It would never be alleged under the terms of this policy. It's my hypothetical. Let's just take a run with me. I'm trying to find out the influence. I'm trying to give you an extreme example of a hypothetical where the documents are found to be totally mistreated. My question is the Court finds that and gives you some relief. Now, what happens in the trial, the medical malpractice trial, with that finding? Medical malpractice trial has to do with whether or not it impacts the duty of care. Pelley said in the brief that there is no basis for malpractice by virtue of record destruction. There's no cause of action. Of course not. You know, your imagination doesn't have to go too far. The idea is a doctor creates malpractice and then he covers up. And that's perfectly legitimate evidence to go in and to help the malpractice case, isn't it, that he covered up? If it makes no difference whether it was alleged, then Your Honor is right. You don't have to be alleged. Let me posit one thing. It's a proof. You're trying to demonstrate negligence. You're trying to demonstrate a doctor failed to abide by the standards of the doctors in the community. And part of the proof is the doctor realized this and altered or destroyed records. Would that come into evidence? Your Honor, with respect, I would never seek to establish negligence in this type of case. It would be improper. It would be improper for my ---- I didn't ask you whether you'd do that. I'm asking whether that evidence would be useful in the medical malpractice case. Your Honor, I have no idea. I have no idea because I'm not there. Let me posit one thing, if I could. I have a dog bite case. Simple. A dog bit. There was negligence in handling whatever they had to do with the dog. The fact of the dog biting is important. The homeowner's policy excludes bites by Rottweilers. They've got to prove there was a bite. They have to prove circumstances relating to the bite. But it's just what type of dog it was and whether it bit. It's not a substantial overlap, and we can't ---- I would ---- I would posit we cannot  The district court had to forecast what might be with a very bare record, which it was your burden to provide. And we're in no better position than the district court. Your Honor, the policy doesn't require us to go beyond what we alleged. It doesn't. I'm sorry, I couldn't hear you. The policy does not require us to go beyond what we alleged. A medical incident is just any act with respect to patient treatment. And the alteration is just something with respect to ---- So if the alteration is a page number, that's sufficient under your theory? It's sufficient if it's material, if it impacts our duties. Nothing impacts our duties more than finding out that the doctor has altered records, and we have to defend that case. So the doctor put in the record initially 46 years old patient. Doctor learns later from the daughter that only 41 years old, so the doctor goes back and crosses out 46 or erases 46 and puts in 41. You argue that that's a change in the policy, a change in the records, and that authorizes a non-coverage? No, Your Honor. It doesn't sound material to me. Not under Virginia law. There's all kinds of breaches of duties under the policies that are not material. That's why we have rescission cases to determine whether or not it made any difference to the insurance company. I can lie straight out on my application, but if the company wouldn't have done anything different, they can't take my insurance away. In this case, there's going to have to be a showing as whether it made any difference in our ability to defend a doctor that the doctor had allegedly altered records in a material way. The problem with the disconnect is your response to Judge Agee's question. He said, wasn't it your burden to put that before the district court? And your response was, almost paraphrasing it was, we don't have to do that under our contract, but you may have to do more in order to come here and say there was abuse of discretion not to get something that you had no right to. That is a declaratory judgment. I must not have been clear. I meant we had no burden to establish fraud and that it would be contrary for Virginia law to us to try. But you said we don't have to do it under the contract. Whatever provision you're talking about, and there's a veil between us and the facts here, which you have every right to be coy about, but there's a price, perhaps, of your being coy about what it is because otherwise we have to find that the court made an error of fact. It is de novo, but not in this issue. But it's hard to say what the district court did as a matter of law that was wrong, considering those factors. I'm sorry if it appears coy. It certainly wasn't meant to. Everybody knows what it was. I didn't mean coy in the sense of a pejorative. I meant coy in terms of a strategy. And lawyers have strategies. There's nothing wrong with the other policy answer there, but coy, I think, is a good adjective for it. Your Honor, I don't know what to say other than the language of the policy seems sufficient to me for the allegations. If we faced a motion, we'd face the motion. I know what we would allege. They do, too, about these record alterations. It's just not before this court. My time is up, and I'm very grateful for the attention of the court today. Thank you, Mr. Howell, and as well as Mr. McNew, for your arguments. We'd love to come down and greet you as we do in our normal Fourth Circuit fashion. I think you can understand under these circumstances we can't, but please know, nonetheless, we appreciate your arguments and your presence here today. Thank you so much, and be safe and stay well. Thank you, Mr. Senior.
judges: Roger L. Gregory, Paul V. Niemeyer, G. Steven Agee